In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3734 & 99-4037

Equal Employment Opportunity Commission,

Plaintiff-Appellant,

and

Judith Keane,

Intervenor-Appellant,

v.

Sears, Roebuck & Co.,

Defendant-Appellee.



Appeals from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 97 C 3971--Charles R. Norgle, Sr., Judge.



Argued September 15, 2000--Decided November 8,
2000



  Before Flaum, Chief Judge, and Kanne and
Williams, Circuit Judges.

  Flaum, Chief Judge.  The Equal
Employment Opportunity Commission
("EEOC") filed suit under the Americans
with Disabilities Act ("ADA"), 42 U.S.C.
sec. 12101 et seq., alleging that Sears,
Roebuck & Co. ("Sears"), engaged in
unlawful employment discrimination
against Judith Keane. The court granted
leave to Keane to intervene in this
matter and file an amended complaint. In
addition to the EEOC's claim that Sears
failed to reasonably accommodate Keane's
disability, Keane asserts in her
complaint that she has been
constructively discharged from her job
with Sears. The district court granted
summary judgment for Sears on both
claims, based largely on its
determination that Keane was not

considered disabled under the terms of the ADA. For the reasons stated herein, we affirm in part and reverse and remand in part.

I.  BACKGROUND

In September 1992, Judith Keane began working at the Sears River Oaks department store in Calumet City, Illinois. As a sales associate in the intimate apparel department, Keane's tasks included handling purchases, assisting customers, sizing racks, and occasionally transporting money to and from cash registers. In the course of her employment with Sears, Keane also worked in other departments, such as handbags, sportswear, and women's dresses. Typically, Keane's work shifts lasted five to six hours.

In the summer of 1994, Keane began to experience a numbness in her right leg that would onset toward the end of her work shift. While the numbness did not impact Keane's ability to walk short distances in her work area during her shift, it did sometimes preclude Keane from taking longer walks such as those required to reach the employee cafeteria or the food court. Because of the difficulties she was encountering, Keane asked her supervisor, Jacqueline Klisiak, if Keane could eat in the intimate apparel stockroom. Though Klisiak acquiesced to Keane's request, later that year she announced a blanket policy that eating in the stockroom was forbidden.

In the fall of 1994, as Keane's condition began to worsen, she approached Klisiak and inquired as to whether Keane could be permitted to use the shoe stockroom as a shortcut. Keane explained that using the stockroom would reduce by half the distance she would have to walk from her car to her department within the store. Klisiak referred Keane to the shoe department manager Joy Krumweide, who denied the request. In November, Keane repeated her request to the store manager Dave Allen. Allen, like Krumweide before him, denied Keane's request. The following month, Keane began to rely on the assistance of a cane when taking longer walks through the store.

In late December 1994, Keane was diagnosed with "neuropathy," a general

description of nerve damage, which was the result of non-insulin diabetes. Keane's neurologist, Dr. Hanlon, provided Keane with a note on which Hanlon had written that Keane should avoid walking long distances and for prolonged periods. Keane provided that note to a supervisory co-worker, who left the note for Klisiak. In January of 1995, Klisiak reviewed the note and determined that the post-holiday reduction in hours was sufficiently limiting the length of Keane's walking periods. Roughly during the same time period, Klisiak gave Keane permission to use the shoe stockroom as a shortcut. However, the first day Keane attempted to use it, Krumweide yelled at Keane to "get out."

In an attempt to further lessen her walking distance, Keane asked Allen if she could park in the merchandise pick-up lot. Allen denied that request but suggested that instead, Keane park in a handicap space outside her department. Parking outside Keane's department did not lessen her commute, as she still had to walk across the store to the employee check-in location before she could commence work in her department.

In April of 1995, Allen spoke to Keane and requested that she have her physician fill out a Sears' Physician Certification Form in order to provide the company with more information regarding Keane's condition. Keane's physician completed the form, noting that Keane suffered from diabetes and neuropathy in her right leg. He recommended that Keane should limit excessive walking and be granted easy and short access to her work site. Upon reading the returned form, Allen assumed that since Keane was permitted to park in the handicapped parking space, her request for accommodation had been granted. Keane neither provided additional medical information regarding her condition nor informed her supervisors that their accommodations were unacceptable.

In May 1995, Keane met with Klisiak. At that meeting Keane was informed that Allen had denied her request to use the shoe stockroom shortcut. Furthermore, Klisiak provided Keane with a new work schedule which required Keane to work on Thursday evenings and Fridays. Though Keane protested that she had always been

and was likewise then unavailable to work on Thursday evenings and Fridays, Klisiak replied that the schedule could not be changed. Feeling that Sears had failed to accommodate her disability and was attempting to make her work environment inhospitable, Keane believed she had no choice other than to resign.

The EEOC filed suit against Sears alleging that the company had failed to reasonably accommodate Keane's disability, in violation of the ADA. When Keane was granted leave to intervene, her amended complaint further alleged that Sears had constructively discharged Keane from her position. Sears filed a motion for summary judgment on both claims. The district court determined that summary judgment was appropriate on plaintiffs' first claim after it had concluded that Keane was not disabled within the terms of the ADA. Specifically, the court held that since Keane was able to walk with the assistance of a cane she was not substantially limited in her ability to walk, and thus not disabled. With regard to Keane's claim of constructive discharge, the district court bypassed the question of whether such a claim is cognizable under the ADA. Rather, the court concluded that even assuming such a claim is theoretically viable, in Keane's case the claim would fail, as she was not (1) disabled, and (2) subjected to conditions that were so intolerable as to require resignation. Thus, the court likewise granted Sears summary judgment on the constructive discharge claim. The EEOC and Keane now appeal, arguing that disputed issues of fact exist as to whether Keane is disabled as the term is understood under the ADA.

II.  DISCUSSION
A.  Standard of Review

In reviewing a district court's grant of summary judgment, we assess the record de novo and reach our own conclusions of law or fact as they flow from the record before us. Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1014 (7th Cir. 1996). This plenary review of the evidence requires that we employ the standard prescribed in Rule 56(c) of the Federal Rules of Civil Procedure, and determine that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Simply put, Rule 56(c) mandates an approach in which summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative. Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997).

In resolving a motion for summary judgment, we will neither come to a conclusion on factual disputes nor weigh conflicting evidence. Miranda, 91 F.3d at 1014. Rather, we will limit our analysis of the record to deciding the aforementioned question of whether a genuine issue of material fact exists for trial. Id. Such an issue exists if "[t]here is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party. Tolentino v. Friedman, 46 F.3d 645, 649 (7th Cir. 1995). However, this is not to suggest that a non-moving party can survive summary judgment with merely a scintilla of evidence supporting its position. Essex v. United Parcel Serv. Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997) (citations and internal quotation marks omitted). With the appropriate standard before us, we now turn to the individual claims and examine the propriety of the district court's grants of summary judgment.

B.  "Failure to Reasonably Accommodate" Claim

On appeal, plaintiffs first contend that the district court erred in granting Sears summary judgment on the claim that Sears failed to reasonably accommodate Keane's disability. The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. Sutton v. United Air Lines, Inc., 527

U.S. 471, 477 (1999). Specifically, the ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a). Section 12112(b) of the Act defines the different ways in which discrimination under section (a) might occur. Relevant to our inquiry, the ADA states that "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee" is considered discrimination, "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. sec. 12112(b)(5)(A). Thus, in order for a plaintiff to recover under the ADA for an employer's failure to reasonably accommodate, that plaintiff must first show: (1) that she was or is disabled as defined by the Act, (2) that her employer was aware of the disability, and (3) that she was qualified for the position in question. Best v. Shell Oil Co., 107 F.3d 544, 547-48 (7th Cir. 1997).

In concluding that summary judgment was appropriate for Sears on plaintiffs' "failure to reasonably accommodate" cause of action, the district court focused almost exclusively on the first prong of the above three-part inquiry. Upon determining that Keane was not disabled under the ADA, the court resolved that the entire claim must fail./1 Our review must therefore center, at least at the outset, on whether there exists a disputed issue of material fact regarding Keane's status as disabled within the terms of the ADA.

Under the Act, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2). Plaintiffs have not advanced that Keane should be considered disabled under either subsections (B) or

(C). Rather, they suggest solely that Keane's neuropathy substantially limits her ability to engage in the major life activity of walking./2 In determining whether an individual is substantially limited in a major life activity, we examine whether that individual, when compared to the general population, is unable to perform or is significantly restricted as to the condition, manner, or duration under which she can perform that major life activity. Duda v. Board of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1058 n.5 (7th Cir. 1998); see also 29 C.F.R. sec. 1630.2(j)./3 Furthermore, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative-- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton 527 U.S. at 482.

Once again, it is not our role to come to a decision as to whether Keane was disabled under the ADA. See Miranda, 91 F.3d at 1014. Rather, we only need decide whether a rational jury, viewing the evidence in the light most favorable to the plaintiffs, could come to such a decision. We believe they could. Thus, we conclude that summary judgment should not have been granted on the basis that Keane was not disabled.

In reaching this decision, we focus on two distinct factors. First, and of paramount relevance to summary judgment proceedings, we find that there exist disputed issues of material fact regarding whether or not Keane is disabled under the ADA. Specifically, we believe there is conflicting evidence surrounding whether Keane's neuropathy substantially limits her ability to walk. When determining whether an impairment is substantially limiting, courts shouldconsider the nature and severity of the impairment, its duration and expected duration, and its permanence or long-term impact. See Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995). Though the progression of Keane's impairment subsequent to her resignation from Sears does not factor directly into the analysis of whether Keane was disabled when she was employed by Sears, we

believe that her present inability to walk more than one city block does provide a certain degree of credence to the claim that her neuropathy may have been "substantially limiting" at the time at issue. In addition, the record contains evidence that during the relevant times, doctors diagnosed Keane as having an impairment that required she limit her walking. While we do not suggest that the evidence conclusively proves that Keane was substantially limited in her ability to walk, on the basis of the testimony of both Keane and her physicians, the plaintiffs have met their burden of establishing a material dispute as to the severity of Keane's impairment.

While such a dispute is sufficient to require our remanding of this case to the district court, we further note certain absences in the record. We believe it is important to point these out, as their presence could assist a court in making a proper determination as to whether an individual is substantially limited in a major life activity, and thus disabled under the ADA. First, the record is incomplete regarding the actual distances that Keane was able to walk. In the course of oral argument, counsel for both sides stated only that these were not long distances. Further, we do not find any evidence of how Keane's impairment limited her ability to walk in comparison to the average member of the population. As we have noted above, such an inquiry, if not required, is certainly helpful in resolving any dispute as to whether someone is substantially limited in a major life activity. However, in the absence of such a comparison, we suggest that a summary judgment determination is problematic.

Additionally, we note that Keane's use of a mitigating device, without a study of its effects, cannot, by itself, support a finding that Keane was not substantially limited in her ability to walk. The district court was correct in analyzing Keane's disability with reference to the mitigating device, as Sutton mandates. However, we must caution that the use of a mitigating device does not automatically bar any possibility of a person being considered disabled. The Sutton approach does not unilaterally exclude from the category of disabled all

those who use a mitigating device to combat the effects of an impairment. Rather, Sutton merely dictates that the analysis of whether a person is substantially limited in a major life activity must be conducted with reference to the mitigating device. 527 U.S. at 482. Sutton, by suggesting that the analysis must factor in any negative impacts of a mitigating device, implicitly rejects the notion that a mitigating device unilaterally bars the determination that someone is disabled. We find that absent in the record is any analysis of how the use of the cane impacted Keane's ability to walk. Here, evidence on this issue was extremely relevant. As plaintiffs note throughout, Keane's cane did not mitigate her neuropathy in any sense, but rather provided her with an alternative means to travel longer distances without having to lean against a wall to keep from falling.

Because of disputes regarding the severity of Keane's condition, along with absences in the record regarding facts that would have assisted in the resolution of those disputes, we cannot conclude that Keane was not disabled as a matter of law./4 The district court did not address whether summary judgment was appropriate based on reasons other than Keane's classification as disabled. While we recognize that the court stated in footnote that it found such arguments persuasive, we determine that it is necessary to remand this case for a more searching analysis.  Therefore, we reverse the district court's decision granting summary judgment on plaintiffs' "failure to reasonably accommodate" claim and remand this cause of action./5

C.  "Constructive Discharge" Claim

Plaintiffs' second argument on appeal is that the district court erred in granting Sears summary judgment on plaintiffs' claim of constructive discharge. Initially, we note that this Circuit has not yet determined whether a claim of constructive discharge stemming from a hostile work environment is cognizable under the ADA. See Miranda, 91 F.3d at 1017. In nearly every instance in which this issue has been raised before this court, we have assumed arguendo that the claim does exist. See id. ("In the present appeal, we need not decide the question of whether a claim of

constructive discharge is cognizable under the ADA because, even assuming that it is, Miranda's claim falls far short of what such a successful appeal would require."); see also, Volmert v. Wisconsin Department of Transportation, 197 F.3d 293, 297 (7th Cir. 1999). We will maintain the posture previously expressed in such cases as Miranda and Silk v. Chicago, 194 F.3d 788, 803-04 (7th Cir. 1999), and reserve the question until it is directly presented./6 Because the underlying claim for constructive discharge in this instance is lacking in support, we would not, in any event, have to reach the issue in order to uphold the district court's grant of summary judgment.

A claim of discriminatory constructive discharge would require a plaintiff to demonstrate first that she was constructively discharged--that the employer made the working conditions so intolerable as to force a reasonable person to leave. Miranda, 91 F.3d at 1017. Once that showing has been made, the plaintiff would have to establish that she was constructively discharged on account of her disability. Id. Because such an analysis would require a determination whether there has been a constructive discharge prior to any conclusion as to whether that discharge was related to a disability, our previous determination that disputed issues of fact exist as to Keane's status as disabled would not preclude us from addressing whether summary judgment in this instance was appropriate.

That being said, plaintiffs have not offered sufficient evidence to create a triable issue of fact with respect to a claim of constructive discharge. "[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997) (citing Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996)). Plaintiffs have failed to present any evidence that Sears' conduct has risen to the levels which would be required to maintain such a claim. In support of their claim, plaintiffs only state that Keane was being denied reasonable accommodations at every turn, and that she was told she would have to work on

Thursday nights and Fridays. Plaintiffs suggest that Keane's being forced to work on days for which she claimed she was unavailable is supportive of plaintiffs' position that Keane was being constructively discharged. However, the record indicates that Keane was unavailable to work on Thursday evenings because that was her "Bingo night," and Fridays because she liked to clean her home. While we do not mean to diminish the importance of recreation time and household responsibilities, we fail to see how an employer's decision, which at the very most would require an employee to slightly rearrange her schedule, constitutes actions that are "beyond ordinary discrimination."

Finally, we note that the district court was correct in determining that quitting was not the only option available to Keane. A perusal of the record seems to indicate that there was poor communication between both sides through out this matter. Instead of discussing the new work schedule and Allen's refusal to allow Keane to use the shoe room shortcut, Keane resigned. While this was certainly her prerogative, we do not believe this was her only option. Though the situation may have been uncomfortable, we cannot conclude that a reasonable person in her position would have been compelled to resign. Because the district court correctly determined that there is no disputed issue of material fact regarding this claim of the plaintiffs, and that Sears was entitled to judgment as a matter of law, we affirm the grant of summary judgment for Sears on plaintiffs' claim of constructive discharge.

III.  CONCLUSION

For the foregoing reasons, we Affirm the district court's grant of summary judgment to the defendant on plaintiff's and intervenor's claim for constructive discharge; we Reverse the district court's grant of summary judgment in favor of the defendant on plaintiff's and intervenor's claim for failure to reasonably accommodate a disability under the ADA; and we Remand this case to the district court for further proceedings consistent with this opinion.

/1 The district court was correct in noting that plaintiffs' claim could not survive absent a determination that Keane was considered disabled under the ADA. "The Act is not a general protection of medically afflicted persons . . . . If the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation." Christian v. St. Anthony Med. Ctr., Inc., 117 F.3d 1051, 1053 (7th Cir. 1997). Nonetheless, after granting summary judgment to Sears based on its finding that Keane had not presented any evidence that she was disabled, the district court, in footnote, stated that it found Sears' other arguments on the issue "persuasive." Specifically, the court noted that while there is a dispute, Sears did allow Keane, at least for a short time, to use the shortcut as well as the stockroom to eat. Furthermore, the court felt that the record suggests that Keane did not adequately satisfy her duty to communicate her impairment to Sears.

/2 The complaint below also puts forth that Keane was substantially limited in her ability to stand. The district court did not believe that any such difficulties warranted a determination that Keane was disabled. On appeal, plaintiffs do not challenge that ruling.

/3 As the Supreme Court noted in Sutton it is unclear how much, if any weight, should be given to these regulations, which were promulgated by the EEOC. 527 U.S. at 478-80. In this instance, the defendant has not contested the notion that, for the purpose of determining whether an individual is substantially limited in a major life activity, that individual must be compared to the average member of society. As the Court did in Murphy v. United Parcel Service, Inc., 527 U.S. 516, 523 (1999), we assume, arguendo, that the EEOC regulations regarding disability determinations are valid.

/4 In determining that summary judgment is inappropriate we note one additional point raised by the defendant. Though the gravamen of Sears' claim is that, as a factual matter, Keane is not significantly impaired in her ability to walk, Sears does present one interesting argument that demands our attention. Sears contends that despite how substantially limiting the court might consider Keane's neuropathy, it cannot qualify as a disability under the ADA, in that the condition was episodic. Keane does not dispute that her condition worsened the longer and farther she was forced to walk, and hence is to a certain extent "episodic." The defendants rely on our decision in Vande Zande v. Wisconsin Dep't of Admin. for

the proposition that intermittent, episodic impairments are not disabilities. 44 F.3d 538, 544 (7th Cir. 1995). However, as stated in Vande Zande, the standard example of an intermittent, episodic impairment is a broken leg. Id. "[A]n intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability and hence a condition that the employer must reasonably accommodate." Id. While we cannot determine whether Keane is considered disabled, we do recognize that if a jury were to find her to be so, it would be based on the fact that she suffered from neuropathy. That neuropathy manifests itself in a predictable yet intermittent pattern does not preclude a finding that one suffering from the condition can be termed disabled. Therefore, in this instance, the fact that Keane's condition was episodic is not dispositive in the disability inquiry.

/5 We do not mean to suggest with this opinion that the determination as to whether an individual falls within the ADA's definition of "disabled" is a question that under different circumstances could not properly be resolved via summary judgment. We have noted in the area of Title VII cases that though discrimination cases frequently hinge on the issue of intent, which is often a contestable issue of material fact, there is no separate standard governing summary judgment in Title VII cases which precludes its use. Wallace, 103 F.3d at 1396. Likewise, while we recognize that the extent of an individual's infirmities will in some instances be a contestable factual determination, we find nothing unique regarding ADA cases that would mark the field inapt for summary judgment.

/6 We note however that a claim for constructive discharge appears to arise under the general prohibition against discrimination with respect to terms or conditions of employment contained in 42 U.S.C. sec. 12112(a). See also 29 C.F.R. sec. 1630.4(i) (stating that it is unlawful to discriminate against a disabled employee in regard to any "term, condition, or privilege of employment."). In addition, a claim for constructive discharge is cognizable under Title VII, an area of law often consulted when analyzing claims under the ADA. See Miranda, 91 F.3d at 1017; Vitug v. Multistate Tax Comm'n, 88 F.3d 506, 516-17 (7th Cir. 1996).