In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2813

Rudolph Winfrey,

Plaintiff-Appellant,

v.

City of Chicago,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96-C-1208--Nan R. Nolan, Magistrate Judge.

Argued April 2, 2001--Decided July 26, 2001

   Before Bauer, Cudahy, and Easterbrook,
Circuit Judges.

   Cudahy, Circuit Judge.  Rudolph Winfrey
appeals a grant of summary judgment to
his employer, the City of Chicago, on his
claim under the Americans with
Disabilities Act, 42 U.S.C. sec. 12101 et
seq. (ADA), and section 504 of the
Rehabilitation Act of 1973, 29 U.S.C.
sec. 794, claiming that the City failed
to accommodate him.

I.

   Winfrey has worked as a laborer for the
Chicago Department of Streets and
Sanitation since 1971. While retaining
the position of laborer, Winfrey was
assigned to work as a ward clerk for
three months in 1971. In 1977,
Winfreybegan to lose his eyesight, and by
1986 he was legally blind. The City was
aware of his impairment in 1977. From
1987 through 1991, Winfrey worked in
special events. In 1991, while he was
employed there, Winfrey was required to
work on a ledge; he fell 25 feet and
broke one of his legs.

   Because of this injury, Winfrey was on
disability leave from June through
December 1991. He returned to work in
January 1992. At that time, he was
assigned to work on a garbage truck.
Because he could not safely perform that

job, Winfrey requested, and was granted, vacation leave while the City purportedly sought a position in which Winfrey could safely perform. Presumably to facilitate that process, Winfrey submitted a letter and resume to the assistant commissioner of the Department of Streets and Sanitation, but the City did not return him to work in 1992. Winfrey then filed a charge with the Illinois Department of Human Rights, alleging that the City failed to accommodate his visual impairment by declining to return him to work. While this charge was pending, Winfrey required additional surgery on his leg, and began receiving worker's compensation. In early 1994, the City requested that Winfrey report for a physical to ascertain his ability to return to active duty. The City's doctors determined that Winfrey had recovered from the leg injury, and they issued him a release to return to work in March 1994. The City did not return him to work, however, because Winfrey had not received a release related to his visual impairment. Nor was he returned to work in 1994 or 1995. In 1994, Winfrey filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that the City discriminated against him on account of his disability by failing to return him to work. The EEOC issued him a right to sue letter in January 1996.

In September 1995, the Department asked Winfrey to fill out a request for a reasonable accommodation form; Winfrey complied with this request. The City then contacted the Mayor's Office for People with Disabilities (MOPD), which began to explore ways to accommodate Winfrey. In September 1996, the MOPD developed a revised job description of the ward clerk position for Winfrey. He began work at this newly fashioned position in December. His supervisor, Francisco Carranza, did not know that Winfrey was blind until he showed up for work. Carranza testified that he did not know how to accommodate Winfrey, so he allowed him to answer phones and take messages, but otherwise gave him nothing to do from December until February. Apparently, Carranza never received the job description prepared by the MOPD.

In February 1997, the Illinois Department of Rehabilitative Services

(IDORS) had consultants from the Chicago Lighthouse for People Who Are Blind or Visually Impaired (the Lighthouse) go to Winfrey's worksite to develop adjusted ward clerk duties for him. Prior to the meeting, Carranza prepared a list of four "partial essential" ward clerk duties he thought Winfrey could perform: 1) maintain refuse collection activity records; 2) contact the wards to issue additional instructions or information; 3) answer telephone complaints and log service requests; 4) contact drivers and log their arrival and departure on assigned routes. The Lighthouse prepared a recommendation for Winfrey that concluded that he was capable of performing these ward clerk functions. However, there were other ward clerkfunctions that Winfrey did not perform. Carranza testified that he did not assign those duties to Winfrey because Winfrey's impaired vision prevented him from driving or reading, and because other employees were already taking care of these functions. Winfrey, upon learning of these duties, requested that the Lighthouse consultants return for another assessment. It did, but its second and third sets of recommendations merely elaborated on the adaptive technology--such as a computer--that could help Winfrey perform his duties as a ward clerk; they made no mention of additional duties he might be able to perform. While the City has provided Winfrey with a computer, it has not trained Winfrey to perform all the duties required of a ward clerk. Thus, he is not considered a full ward clerk, nor is he remunerated as one.

Winfrey apparently desires to be assigned the position of laborer, ward clerk or dispatcher--all of which would entail higher pay than he currently receives in his scaled-down job. Winfrey presented evidence that two laborers have worked as ward clerks for at least two years but perform no other laborer duties. Winfrey filed a lawsuit claiming that the City violated the ADA and the Rehabilitation Act by failing to reasonably accommodate his blindness when it did not return him to work from March 1994 to December 1996. He further alleged that the City continues to fail to accommodate him since his return to work in December 1996. Both parties moved for summary judgment. Winfrey also sought to

amend his complaint and the City filed a motion to strike certain paragraphs of Winfrey's statement of facts. The district court denied both of Winfrey's motions, granted the City's motion for summary judgment and partially granted the City's motion to strike. The district court found that Winfrey was not a qualified individual under the ADA and the Rehabilitation Act. On another of Winfrey's claims, the court concluded that, although Winfrey might be able to perform the essential functions of a dispatcher--and thus be qualified for that particular job--the City was not required to give him priority over members of the Teamsters Union with seniority, with which it has a collective bargaining agreement.

We review the district court's grant of summary judgment de novo, drawing all inferences in the light most favorable to Winfrey. See Mills v. Health Care Service Corp., 171 F.3d 450, 454 (7th Cir. 1999). Summary judgment is appropriate only if the record reflects no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

II.

To establish a claim for failure to accommodate under the ADA or the Rehabilitation Act, the plaintiff must demonstrate that he or she is a disabled person as defined by the statute, that the employer knew about the disability and that he or she is otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation. See Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 674 (7th Cir. 1998). Winfrey bears the burden of proof to demonstrate these prerequisites. See Bultemeyer v. Fort Wayne Cmty. Schools, 100 F.3d 1281, 1284 (7th Cir. 1996). The City does not dispute that Winfrey was disabled or that the City knew about the disability. But it argues, and the district court held, that Winfrey has nevertheless failed to meet his burden because he has failed to show that he is a "qualified individual with a disability" within the meaning of the ADA. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or

without reasonable accommodation, canperform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. sec. 12111(8). Thus, to prove that he is a qualified individual, Winfrey must show that he can perform the essential functions of the positions he seeks. See Bultemeyer, 100 F.3d at 1284.

The district court concluded that Winfrey failed to show that he could perform the essential functions of a ward clerk. First, the court had to determine what those duties are. Evidence pointing to essential functions includes, but is not limited to: 1) the employer's judgment as to what functions are essential; 2) written job descriptions prepared for advertising for, or interviewing, job applicants; 3) the amount of time spent on the job performing a particular function; 4) the consequences of not requiring an employee to perform a function; 5) the terms of a collective bargaining agreement; and 6) work experience of past and present employees in the position. 29 C.F.R. sec. 1630.2(n)(3) (2000). The district court concluded (and Winfrey does not appear to question) that the following are the full (but not necessarily essential) duties of ward clerks:

distribute tickets (administrative adjudicative and parking enforcement), sign-in the refuse collection coordinators, collect tickets, contact the wards for Sunday baskets, receive drivers for Sunday baskets, pick-up mail, handle some payroll functions, answer the radio and telephones, order supplies by preparing requisition forms, pick-up supplies, monitor use of supplies, facilities management, complete order for repairs, occasionally hand out forms, handle attendance, and handle special details for overtime, i.e., Sunday baskets.

Mem. Op. & Order at 16. Although the parties do not appear to dispute that these are all ward clerk duties, they do disagree as to which of these duties are essential. The City argues that the official job description on file with the City lists the essential duties; Winfrey contends that the fact that Carranza's deposition testimony conflicted with this official description creates a genuine

issue for trial. This official description contains under the heading "essential duties" the following:

Maintains records . . . prepares various reports including manpower distribution and absentee reports, daily truck and hired equipment allocations and street cleaning activity reports; contacts division office on a daily basis to report crew shortages, route completion and tonnage collected; maintains color coded maps to track daily work progress of crews throughout the ward; reviews daily timesheets and maintains timekeeping records for staff assigned to the ward; maintains records and prepares overtime cost reports; prepares various personnel forms including accident reports, payroll action forms and other employee personnel forms; receives requests from ward residents for sanitation services and forwards to Ward Superintendent; operates a computer terminal to input and update complaints and service requests received from ward residents; maintains a log of complaints or service requests . . . provides area police district with information of ward areas scheduled for street cleaning; maintains inventory records of tools and materials issued to the ward; prepares requisitions to order tools, materials and office supplies as directed.

Plaintiff's Exhibit Z. The district court concluded that Winfrey failed to undermine the City's (Carranza's) determination that Winfrey could not perform the following essential duties:

distribute tickets, sign-in the refuse collection coordinators, collect tickets, contact the wards for Sunday baskets, receive drivers for Sunday baskets, pick up mail, process parking tickets, payroll functions, order supplies, facilities management, and keep attendance records.

Mem. Op. at 17 (citing Carranza deposition). This list of duties appears, at first glance, largely dissimilar from the duties outlined in the written job description provided by the City. But the district court was apparently satisfied that Carranza's testimony coincided with the essential duties identified by the City's job description: "Carranza's inability at his deposition to recall all of the ward clerk duties performed . . .

does not create a genuine issue concerning whether the City's official job description contains the essential functions of the position." Mem. Op. at 17. We are also satisfied; while the exact terminology may differ, the substance of the functions is the same.

Winfrey also argues that the accommodation the City did provide--the adjusted, limited ward clerk position-- demonstrates that those four duties to which he was assigned must be the only essential duties of the full ward clerk position that he seeks. But it has been clear from the onset of this case that the City created a modified ward clerk position for Winfrey, consisting of duties that Carranza believed he could perform. This was an accommodation that the City was not obliged to perform, and the fact that the City was willing to work with Winfrey will not count as evidence that the position it created is in fact the full ward clerk position. In a related context, we have observed that "if an employer 'bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the rea sonableness of so far-reaching an accommodation.'" Amadio v. Ford Motor Co., 238 F.3d 919, 929 (7th Cir. 2001) (quoting Vande Zande v. Wisconsin Dep't of Admin., 44 F.3d 538, 545 (7th Cir. 1995)). As the City argues, the creation of a modified position for Winfrey does not demonstrate that the four duties he performed are the only essential duties of the unmodified job that he now seeks.

Winfrey next contends that there is a genuine issue whether the functions alleged by the City to be required, but not assigned to Winfrey, are in fact essential. Winfrey tries to buttress his position by arguing that the other ward clerks do not perform all of the functions claimed to be essential. However, showing that not all employees perform at a particular time all the essential job functions does not make those functions non-essential. See Malabarba v. Chicago Tribune Co., 149 F.3d 690, 700 (7th Cir. 1998). We have observed that "if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate

through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its essential duties." Miller v. Illinois Dep't of Corr., 107 F.3d 483, 485 (7th Cir. 1997). Here, Winfrey has failed to controvert the City's claim that ward clerks must be capable of performing all the essential duties of their position, and that they may be called upon to perform any of them at any time.

Winfrey's evidence that he could perform any function beyond those assigned to him by Carranza is minimal at best. First, he contends that the Lighthouse determined that he could perform the essential functions of ward clerk with an appropriate accommodation. This is based on the Lighthouse recommendations. First, the Lighthouse stated that "[t]he following are recommendations for Mr. Winfrey to perform his essential job functions . . . . I would recommend that a computer be placed at his desk . . . . [T]he computer would need word processing functions to allow him to perform his job . . . ." Exhibit W (Lighthouse Accommodation Recommendation, Mar. 6, 1998). The recommendation after the Lighthouse's second visit contained the following statement: "At this and earlier meetings, it had been determined that a computer with proper adaptive technology would enable Mr. Winfrey to perform his duties as a Ward Clerk." Exhibit X (Lighthouse Accommodation Recommendation, Mar. 26, 1998). The district court concluded that these references to the functions of ward clerk involved only the four duties presented by Carranza. We agree. There is no evidence that the Lighthouse was even aware of the allegedly essential functions of the ward clerk position. Further, the nature of its recommendations indicates that the Lighthouse was referring to the four functions prescribed for Winfrey by Carranza (contacting drivers and the like) and not the functions for which Winfrey is unqualified (picking up mail, distributing tickets, and the like).

Winfrey's additional "evidence" is that "one only needs to look at the functions that have not been shown to Winfrey and be persuaded that if shown the functions accompanied with the accommodation suggested, that is, a computer with speech Winfrey could perform these

functions too." Appellant's Brief at 25. He contends that the forms ward clerks complete could be entered onto his computer, which would allow Winfrey to tab to the blanks that needed to be completed. Winfrey also contends that his inability to drive would not prevent him from picking up the mail and supplies, because two clerks generally perform that function. He argues that he already orders supplies. And he suggests that he has the ability to review payroll, though he does not explain how except by stating that he could be trained to do it. This is simply not enough to show that Winfrey can perform the duties of a ward clerk. It is undisputed that he cannot perform clerical functions that require filling in or reviewing forms that are not computerized. If there is an accommodation that would allow Winfrey to perform these functions, Winfrey has not identified it. He has presented no evidence that he can manage payroll functions, collect tickets and the like, with or without the aid of a computer. And he has presented no evidence that functions such as signing in refuse collection coordinators can be computerized. We do not foreclose the possibility that there is some accommodation that would allow Winfrey to perform additional ward clerk duties. But one thing is clear: he has presented no evidence that he can perform duties beyond the four identified by Carranza. Winfrey has simply failed to meet his burden.

III.

In addition to arguing his qualifications for the ward clerk position, Winfrey makes an incidental effort to appeal from the district court's finding that he did not qualify for the position of laborer. As far as we can tell, this title is available to two other ward clerks who are able to perform all ward clerk duties, in addition to being available to be called to the field (which might entail working on garbage trucks and/or working at heights) at any time. Winfrey argues that working on garbage trucks and at heights are not essential duties of the laborer position. The district court found that a reasonable jury could come to that conclusion. However, while the district court left open the possibility that one

need not perform those duties to be a laborer, Winfrey still has not found a laborer position whose duties he can perform. The only possible laborer position he has identified is the one occupied by the two persons who perform ward clerk duties. The court therefore was correct to require that Winfrey demonstrate an ability to perform all the ward clerk duties in order to qualify as a laborer. Consequently, Winfrey has not identified or described a laborer position for which he is qualified; he refers only to two "laborers" who currently serve as ward clerks and who can perform all essential ward clerk functions. Thus, the district court did not err in finding that Winfrey failed to show that he is a qualified individual for the laborer position.

IV.

Winfrey also indicated a desire to occupy the position of dispatcher, and--because he was never given a chance to explore this position--he claims the City failed to engage in good faith in an interactive process designed to accommodate him. To make such a claim, Winfrey must identify a vacant dispatcher position and prove he is qualified for it. See Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001) ("If there were [a vacant] position, only then do we consider whether the failure to provide that accommodation was due to a breakdown in the interactive process.") (citing Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 632 (7th Cir. 1998)); McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1165 (7th Cir. 1997); Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996). A position is not considered vacant if the employer has a legitimate reason, unrelated to the employee's disability, for reserving the position for others. See Ozlowski, 237 F.3d at 841-42. The duty to reassign does not require an employer to "abandon its legitimate, nondiscriminatory company policies" for this purpose. See Dalton, 141 F.3d at 678.

The district court concluded that Winfrey made a sufficient showing that he could perform the essential duties of the dispatcher position. But it found that the City was not required, under the ADA, to assign him to that job because "[a]n

employer is not required to violate the provisions of a collective bargaining agreement to reassign a disabled employee pursuant to the ADA." Cochrum v. Old Ben Coal Co., 102 F.3d 908, 912-13 (7th Cir. 1996). It is undisputed that the dispatcher position is covered by the City's collective bargaining agreement with the Teamsters Union. Thus, only those employees represented by that union could bid for the job. Winfrey could therefore bid for the position only if the union agreed not to contest his eligibility. The district court concluded that there was no evidence the union would consent to accepting Winfrey. Winfrey argues that he had presented persuasive evidence on this point: he himself occupied the position from 1987 to 1991. However, he has offered nothing to show that this fact demonstrates that a position is currently available. Complying with the collective bargaining agreement is a legitimate, nondiscriminatory policy, and the City was not required to abandon it in order to accommodate Winfrey's disability.

V.

The City moved to strike several portions of Winfrey's statement of facts, and the district court granted the City's motion as to two of these paragraphs. Winfrey appeals from the striking of paragraph 84. We review the grant of amotion to strike for abuse of discretion. See Maldonado v. U.S. Bank, 186 F.3d 759, 768 (7th Cir. 1999). Paragraph 84 reads "The recommendations [by the Lighthouse consultants], if implemented would allow plaintiff to perform the duties of a ward clerk that he has not been shown." This statement essentially implies that the Lighthouse concluded that Winfrey could perform all the essential functions of the ward clerk position--not just the functions that Carranza had outlined for Winfrey. The City argued below that this assertion was speculative, and the district court agreed. The court noted that the Lighthouse consultants, when making that recommendation, did not know the full extent of the duties of the ward clerk position. They were only aware of the four duties, and therefore their conclusion could not have been referring to anything more than those duties. For the reasons outlined in Part II of this

opinion, we agree. The district court did not abuse its discretion.

VI.

For the foregoing reasons, we AFFIRM.