Dennis PERRY, Plaintiff–Appellant,

v.

**MIDSTATES INDEPENDENT UNION and Krooswyk Trucking and Excavating, Defendants–Appellees.**

No. 00–4337, 01–1717.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 8, 2001.

Decided Sept. 28, 2001.

Before RIPPLE, MANION, ROVNER, Circuit Judges.

## ORDER

Dennis Perry filed a hybrid action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), alleging that: (1) his employer—Krooswyk Trucking and Excavating ("Krooswyk")— violated a collective bargaining agreement ("CBA") by terminating him without just cause; and (2) his union—the Midstates Independent Union ("MIU")—violated its duty of fair representation by mishandling the resulting grievance. Mr. Perry also claimed that the MIU breached its duty to fairly represent him during negotiations of two consecutive CBAs. The district court granted the defendants' summary judgment motions, reasoning that Mr. Perry could not maintain his hybrid claim because he failed to exhaust the contractual grievance procedures before filing suit and he failed to establish that exhaustion would have been futile. The court also concluded that Mr. Perry lacked standing to allege that the MIU failed to fairly represent him during CBA negotiations that preceded his employment. Mr. Perry appeals these determinations and we affirm.

## Standard of Review

We review the district court's grant of summary judgment de novo. *See Winfrey v. City of Chicago*, 259 F.3d 610 (7th Cir. 2001). Summary judgment is appropriate only if the record reflects no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## Background

Drawing all inferences in the light most favorable to Mr. Perry, the facts are as follows. In the early 1990s, the International Union of Operating Engineers Local 150 ("Local 150") unsuccessfully attempted to organize Krooswyk employees. Because they perceived Local 150's organizational efforts to be harassing, two Krooswyk employees formed the MIU. In 1995, Krooswyk recognized the MIU as the exclusive bargaining agent of its employees. That same year, Krooswyk and the MIU entered into a CBA that became effective on January 1, 1996, and lasted for three years ("1996 CBA"). One month before the expiration of the 1996 CBA, the parties negotiated a second CBA that became effective on January 1, 1999, and lasted for two years ("1999 CBA"). The 1999 CBA set out the following exclusive grievance procedure: Step 1—the employee must meet with his foreman within three days and attempt to resolve the grievance orally; Step 2—the employee or his union representative must submit a written grievance to the employer within five days of receiving the employer's step 1 answer; Step 3—arbitration.

In the spring of 1999, Mr. Perry applied for a job as a bulldozer operator with

Krooswyk. During the interview, the president of the company, Gerald Krooswyk ("Gerald"), asked Mr. Perry whether he belonged to a labor union. After Mr. Perry answered "no," Gerald hired him. But Gerald warned Mr. Perry that because Krooswyk had its own union, he should not "mess with [Local] 150." Gerald then informed Mr. Perry that Krooswyk had about six months of work for him.

Despite the earlier warning, Mr. Perry met with a representative of the rival union during his third week of employment. While working at Krooswyk's Hobart Lane construction site, Mr. Perry met and briefly spoke with a Local 150 representative named Delbert Watson. During the conversation, Gerald drove through the job site. Mr. Perry testified that Gerald was in a position to witness the discussion. The next day Gerald laid off Mr. Perry, informing him that he had no more work for him. Mr. Perry returned to work the following day and said to Gerald "I thought you had six more months of work [for me]." Gerald responded that Mr. Perry had been warned from the beginning not to associate with Local 150.

Mr. Perry then went to see his foreman and union representative Jim Waldmarson. Mr. Perry relayed his conversation with Gerald and then asked Waldmarson for "help." Waldmarson cut him off, explaining that Mr. Perry had been warned about associating with Local 150 and that he should get in his car and leave. Mr. Perry does not recall whether he used the word "grievance" when he asked Waldmarson for help. Neither Mr. Perry nor the MIU took further action regarding his termination prior to the filing of this suit.

## Discussion

On appeal, Mr. Perry argues that his failure to exhaust the exclusive grievance procedure should be excused because pursuit of those remedies would have been futile. He also argues that he has standing to allege that the MIU mishandled the CBA negotiations because the LMRA permits employees to sue their union over contract negotiations that occurred prior to their employment.

## I. Exhaustion & Futility

 Generally, an employee seeking a remedy for an alleged CBA breach must attempt to exhaust his contractual remedies under that agreement before filing suit against his union or employer under § 301(a) of the LMRA. *McLeod v. Arrow Marine Transport, Inc.*, 258 F.3d 608, 610 (7th Cir.2001). The district court held that Mr. Perry's statement to his union representative—that the MIU should "help" him—was not specific enough to trigger the union's duty to file a grievance. Mr. Perry does not challenge this determination on appeal.[1] Instead, he argues that his deposition testimony that he did not recall whether he used the word "grievance" when he spoke with his representative, viewed in the light most favorable to him, supports an inference that he asked his representative to "file a grievance." We need not reach this argument, however, because even if we were to assume that Mr. Perry asked his union representative

---

1. In his reply brief, Mr. Perry argues that courts should consider speech inflection and body language as well as the actual words spoken when analyzing whether an employee requested his union to file a grievance on his behalf. However, he waived this argument by failing to raise it in his opening brief. *Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir.1997). Moreover, this argument is undeveloped. Mr. Perry does not cite any legal authority for his position nor does he identify any facts pertaining to speech inflection or body language which would have permitted a reasonable factfinder to infer that Mr. Perry requested Waldmarson to file a grievance.

to file a grievance and the representative refused, we would still conclude that Mr. Perry failed to exhaust the grievance procedure. According to the grievance procedure—a procedure Mr. Perry had a duty to know, *see Hammer v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.,* 178 F.3d 856, 858–59 (7th Cir.1999)—after receiving the employer's step one answer, an employee has five days to file a grievance, either on his own or through his union representative. Assuming Mr. Perry received Krooswyk's step one answer the day after he was fired, Mr. Perry had five days after his discussion with Waldmarson to file a grievance on his own. He chose not to invoke that available remedy.

Instead of challenging the district court's exhaustion determination, Mr. Perry argues that his failure to exhaust should be excused because exhaustion would have been futile. Futility is a recognized exception to the exhaustion requirement. *Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 331, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *McLeod,* 258 F.3d at 616. But an employee's speculation that it would be futile to file a grievance is insufficient to excuse the employee's failure to exhaust. *See Douglas v. American Info. Technologies, Corp.,* 877 F.2d 565, 574 (7th Cir. 1989); *Parham v. Carrier Corp. .,* 9 F.3d 383, 390–91 (5th Cir.1993). Rather, the employee must put the grievance procedure to the test, *see Mechmet v. Four Seasons Hotels, Ltd.,* 825 F.2d 1173, 1178 (7th Cir.1987), for example, by filing "re-peated complaints to company and union officials," *Glover,* 393 U.S. at 331, 89 S.Ct. 548. Therefore, Mr. Perry must show that he tried to exhaust his contractual remedies and that further attempts to pursue a grievance would have been futile.

Mr. Perry argues that he did not ask his representative to file a grievance because such a filing would have been futile given Krooswyk's obvious animus towards those that associated with rival unions. We agree that the statements by Gerald and Waldmarson support an inference that Krooswyk and the MIU disfavored those who associated with rival unions. But this is not enough to establish futility. An employee must put the grievance procedure to the test. *See Douglas,* 877 F.2d at 574. Mr. Perry does not provide us with any reason to disturb the district court's determination that he did not ask his union representative to file a grievance. Thus, because he did not invoke the grievance procedure, his speculation about the improbability of winning a grievance is irrelevant.[2]

## II. Failure to Represent During CBA Negotiations

Mr. Perry also alleged that the MIU breached its duty to fairly represent him during negotiations over the 1996 and 1999 CBAs. The district court concluded that Mr. Perry lacked standing to bring this claim because the CBA negotiations at issue predated his employment. Citing *NLRB v. Town & Country Elec., Inc.,*

---

**2.** The district court also denied Mr. Perry's motion to reconsider the court's futility determination based on "new evidence." The "new evidence" was a letter Mr. Perry sent to the MIU after the court's summary judgment decision asking the MIU to file a grievance on his behalf. The MIU did not respond. The district court denied the motion, correctly reasoning that Mr. Perry had to show not only that the evidence was new but also that it could not with reasonable diligence have been discovered and produced during the pendency of the summary judgment motions. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir.1996). Because we agree that Mr. Perry did not make the requisite showing, we affirm the district court's denial of his motion to reconsider (docketed as appeal no. 01–1717).

516 U.S. 85, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995), Mr. Perry argues on appeal that, for purposes of the LMRA, the term "employee" includes future beneficiaries of a CBA. Thus, he reasons, these future beneficiaries have standing to attack a union's negotiations that occurred prior to their employment. We do not agree with Mr. Perry's analysis of *Town & Country*. In that case, the employees were job applicants. The Court noted that the term "employee" is defined broadly enough for purposes of the National Labor Relations Act ("NLRA") to include job applicants "for otherwise the [NLRA's] prohibition of discrimination in regard to hire would serve no function." *Id.* at 87–88, 116 S.Ct. 450 (internal quotations and citation omitted). It does not follow that Mr. Perry was an "employee" for purpose of the LMRA prior to his employment. Job applicants have a relationship with the employer based on their application for employment, and that relationship is regulated by the NLRA, i.e., the employer cannot discriminate in its hiring practices. Mr. Perry, in contrast, had no relationship with the MIU or Krooswyk during negotiations over the 1996 and 1999 CBAs. Appellees correctly point out that the Supreme Court has analogized a union's duty to fairly represent members of the collective bargaining unit to an attorney's duty to his client or the duty of corporate officers and directors to their shareholders. *See Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 74–75, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). Just as a shareholder lacks standing to sue a corporate officer for actions that occurred before he purchased stock, Mr. Perry lacks standing to allege that the MIU failed to fairly represent him during CBA negotiations that preceded his employment.

 Even if we were to assume both that Mr. Perry has standing to bring this claim and that his claim is timely (a questionable assumption that we do not need to discuss here), we note that Mr. Perry failed to present sufficient evidence that the MIU breached its duty of fair representation. To establish that a union violated the LMRA during CBA negotiations, an employee must show that the union's actions were either arbitrary, discriminatory, or in bad faith. *O'Neill,* 499 U.S. at 67, 111 S.Ct. 1127 (quotations omitted). Mr. Perry points to the CBA as evidence of the MIU's failure during negotiations, arguing that the agreement is grossly distorted in Krooswyk's favor. But that document may constitute evidence of a breach by the MIU "only if it can be fairly characterized as so far outside a wide range of reasonableness that it is wholly irrational or arbitrary." *Id.* at 78, 111 S.Ct. 1127 (internal quotations and citation omitted). Among other things, the CBA in this case protects employees from at-will termination, institutes a standardized grievance procedure, and sets out a profit-sharing policy. Because Mr. Perry cannot establish that the 1999 CBA is wholly irrational or arbitrary, the agreement does not constitute evidence that the union violated the LMRA during CBA negotiations. Moreover, because the agreement is the only evidence submitted by Mr. Perry of the MIU's alleged breach, he cannot establish that the union breached its duty of fair representation with respect to the CBA negotiations.

Conclusion

Mr. Perry's failure to invoke the exclusive grievance procedure precludes his futility argument. Accordingly, we affirm the district court's dismissal of his hybrid claims under § 301 of the LMRA against Krooswyk and the MIU. Also, because Mr. Perry lacked standing to challenge his union's conduct during CBA negotiations that preceded his employment, we affirm the

district court's dismissal of that claim as well.