John M. NORDHOFF, Plaintiff–Appellant,

v.

Hansford T. JOHNSON, Acting Secretary of the Navy,[1] Defendant–Appellee.

No. 02–3805.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 18, 2003.[*]

Decided Nov. 21, 2003.

1. Hansford T. Johnson is substituted for his predecessor as the Acting Secretary of the U.S. Navy. FED. R.APP. P. 43(c)(2).

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

John M. Nordhoff, pro se, Bloomington, IN, for Plaintiff–Appellant.

Sue Hendricks Bailey, Office of the United States Attorney, Indianapolis, IN, for Defendant–Appellee.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

### ORDER

John Nordhoff, acting *pro se,* sued the Secretary of the Navy, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* for violating the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.,* by refusing to accommodate his mental handicap. Nordhoff suffers from obsessive/compulsive disorder and depression and has been under psychiatric care since approximately 1986. The district court found that Nordhoff failed to demonstrate any discrimination and granted summary judgment in favor of the Secretary. Nordhoff appeals and we affirm.

Nordhoff had a long history working with the Navy. In 1971, he was employed full-time as an electrical engineer by the Naval Weapons Support Center in Crane, Indiana. He left that job in 1976 but returned in 1980 as a project manager in charge of construction contracts for the Public Works department. In 1986, however, he suffered an unspecified traumatic

experience on the job, was hospitalized, and took medical leave. When he returned, he began working for the Small Business Innovation Research group as program manager, qualifying independent small business engineering firms to perform feasibility and developmental studies for new products. Due to funding cutbacks, in early March 1991 Nordhoff was reassigned to test, evaluate, and repair a Scanning Electron Microscope (SEM). This new job required him to do electronics repair work, a task he did not have to perform in his previous management positions, and he says it caused him "anxiety, high blood pressure, periods of great nervousness, diarrhea, and ... an inability to cope." In May 1991, Nordhoff was taken to the emergency dispensary twice due to stress from the SEM job, and subsequently went on sick leave for two weeks. The problems continued the following month, when again he was taken to the dispensary and had to miss work.

In mid-June, Nordhoff's manager determined that the SEM position was one of low stress and assigned Nordhoff permanently to that job. Nordhoff wrote several letters to his manager and supervisor stating that he could not accept the position due to "a personal mental/physical health problem," and stated that the job made him anxious. He requested reassignment to a project manager position.

At the end of June, the Center's Human Resources (HR) department had Nordhoff undergo a psychiatric evaluation as part of a fitness-for-duty examination. The psychiatrist concluded that Nordhoff had a severe obsessive/compulsive neurosis and that he was not capable of handling the new job of evaluating and repairing the electron microscope but that, if he "returned to a type of project manager work that he had in the past," he could be a competent and successful employee. Nordhoff's manager says that he understood the evaluation to mean that Nordhoff could not perform the SEM job no matter what kind of accommodation could be made.

Nordhoff met with the HR director and manager in mid-July and discussed with them the type of project manager positions he believed would suit him. He suggested that he be placed in one of two available positions: the first was a Trident missile guidance project manager that required detailed knowledge of the Trident system and was a grade higher than any grade Nordhoff had held; and the second involved working with printed circuit boards, which required detailed mechanical engineering skills. The HR manager and director told Nordhoff that they had considered him only for other project management positions outside of Public Works, but believed that each one required expertise Nordhoff did not have and would be too stressful for him, with extensive travel, short deadlines, and relying heavily on interpersonal skills. The HR manager stated that Public Works had more low-level stress positions available. However, after the two men suggested alternative positions in Public Works, Nordhoff wrote back, stating that he could never return to work in his former department, which years earlier he had to leave "under conditions so traumatic I was hospitalized in the Stress Care Center for 17 days and I have been unable to return there or certain other places on this depot."

In August, the commander of the Center sent Nordhoff a letter stating that as an accommodation for Nordhoff's stress problem caused by the SEM job, in September he would be reassigned to unclassified duties in Public Works at his current salary. Nordhoff promptly responded, reiterating that he could not be placed in Public Works because "[t]he complete reasons are so personal and traumatic I could only tell them in confidence to a Priest or

my Doctor, but suffice it to say now it would be impossible for me to work in Public Works or in Building 41." Declining to substantiate the problems, Nordhoff added that "the exact and detailed reasons why are private, personal, and medical in nature. Since you are not competent to render decisions or opinions regarding my or anyone elses [sic] medical condition, I see no reason to divulge to you why I can not work in PW or [Building] 41."

At the end of August, the commander informed Nordhoff that the assignment in Public Works was an interim measure to accommodate his limitations, and warned Nordhoff that he would be subject to "severe disciplinary action" if he failed to report for duty. The commander also advised Nordhoff that if he could not physically perform the Public Works job, he should contact HR for disability retirement counseling.

Nordhoff believed the commander's letter meant that he would be fired or would have to retire if he did not accept the new assignment. On September 3, his first day of the new job, Nordhoff called his supervisor to tell him he could not report to Public Works due to health problems. Nordhoff's supervisor later called him and told him he was being placed on "absent without leave" status because he had not shown up for work. The following day, Nordhoff went to HR to obtain the paperwork for retirement proceedings.

Nordhoff then submitted an application for disability retirement and included physicians' statements recommending disability retirement due to obsessive/compulsive disorder and major depression. Nordhoff's application was approved and became effective in October.

After pursuing administrative remedies with the Navy, Nordhoff filed this complaint in the district court, alleging that the Center discriminated against him based on his mental handicap and forced

him to take disability retirement. The district court granted summary judgement in favor of the Center, finding that Nordhoff failed to create any issue of fact as to whether the Center violated the Rehabilitation Act by refusing to accommodate his mental handicap and forcing him to choose between termination and disability retirement.

On appeal, Nordhoff argues that the district court erred in finding there was no genuine issue as to any material fact establishing that his retirement did not result from illegal discrimination. He maintains that he has shown he was a qualified handicapped individual who was not accommodated and was forced into retirement. We review the district court's grant of summary judgment de novo, viewing all of the facts and drawing all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir.2001). Summary judgment is proper if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To establish a claim for failure to accommodate under the Rehabilitation Act, the counterpart of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, for federal agency defendants, the plaintiff must demonstrate that he is a disabled person as defined by the statute; that the employer was aware of the disability; and that he is "otherwise qualified" to perform the "essential functions" of the job, "with or without reasonable accommodation." *See Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir.2001). The Center does

not dispute that Nordhoff was disabled or that they knew about the disability.

The district court held that the Center was not liable for failure to accommodate by reassignment because Nordhoff had failed to submit evidence demonstrating that a vacant position existed for which he was qualified and was able to perform the "essential functions" of the position. *See Winfrey,* 259 F.3d at 615. Nordhoff, however, argues that he was qualified for either the Trident or circuit board position. In order to be "qualified," the employee must meet the education and experience requirements for the position and must be able to perform the essential functions of the position, with or without reasonable accommodation. *See Ozlowski,* 237 F.3d at 840. Nordhoff did not provide any evidence that he possessed the education, skills, and experience for either position. He did not present evidence that he had experience with Trident missile systems or that he would be able to cope in a higher grade position that was described as "one of the most stressful positions in the department." For the second position, Nordhoff's record shows he had limited experience with printed circuit boards and lacked any mechanical engineering experience and skills. This position also involved more stress, with many deadlines and constant interaction with various customers and manufacturers. Given his long-term stress-related problems, Nordhoff does not show that he is fit for managerial positions with substantial responsibility, deadlines, and heavy personal interaction, nor has he pointed to other vacant project manager openings for which he might be qualified. In addition, he never substantiated why he could not handle positions that were offered to him in certain departments or locations, such as Public Works or Building 41. Nordhoff's conclusory statements and unsubstantiated, self-serving affidavit do not show that he could perform the duties of the two management positions he requested. Because Nordhoff failed to prove he was a qualified candidate, the district court did not err in granting summary judgment in favor of the Center. *See Ozlowski,* 237 F.3d at 842.

Nordhoff next argues that the district court erred in finding that he had not been constructively discharged. Nordhoff maintains that he was forced to retire because the Center failed to accommodate him with another job. To establish constructive discharge in a discrimination setting, a plaintiff must show that "his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Bennington v. Caterpillar Inc.,* 275 F.3d 654, 660 (7th Cir.2001). "[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 440–41 (7th Cir.2000). The evidence in the record shows that Center officials engaged in an interactive process and went to some length to place Nordhoff in a position that he could handle. *See Winfrey,* 259 F.3d at 616. They are not required to create the ideal employment opportunity as envisioned by Nordhoff or to give him preferential treatment because of his handicap. *See Mays v. Principi,* 301 F.3d 866, 872 (7th Cir. 2002). Ultimately, Nordhoff had options but failed to provide any evidence that the SEM position or the position in Public Works or any other positions suggested by HR created the type of intolerable workplace that would compel an employee to resign.

AFFIRMED.