In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1079

Arthur Ozlowski,

Plaintiff-Appellant,

v.

William J. Henderson, Postmaster General,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois.
No. 99 C 756--Charles P. Kocoras, Judge.

Argued September 19, 2000--Decided January 17, 2001

Before Bauer, Manion, and Kanne, Circuit Judges.

Manion, Circuit Judge. Arthur Ozlowski sued his
former employer, William Henderson, the
Postmaster General of the United States, alleging
that the United States Postal Service had failed
to accommodate his disabilities in violation of
the Rehabilitation Act of 1973, 29 U.S.C. sec.
791, et seq. The Postal Service filed a motion
for summary judgment and Ozlowski filed a cross-
motion for partial summary judgment. The district
court granted the Postal Service's motion and
denied Ozlowski's cross-motion. Ozlowski appealed
to this court, and we affirm.

I.  Facts

Since 1969, Ozlowski has been afflicted with
arachnoiditis, a degenerative spinal disease. As
a result of this disease, over the years Ozlowski
has had several knee surgeries, including two
knee replacements. The disease is progressive and
over time caused increasing difficulties to
Ozlowski, finally culminating in the events
giving rise to this lawsuit.

Ozlowski began working with the Postal Service
in 1975 as a senior computer operator at the
Chicago Bulk Mail Center ("BMC"). In 1986, he
became supervisor of process control systems. He
continued working in a variety of computer-
related positions until late 1992 or early 1993

when the Postal Service reorganized as part of a national plan and eliminated his supervisory position. After the reorganization, in October, 1993, Ozlowski was offered his former job as senior computer operator but at the same pay he was currently receiving. He claims that he refused that offer because he wanted a position more commensurate with his experience. Ozlowski was eventually assigned to be supervisor of distribution operations at the Fox Valley facility in Aurora, Illinois. However, Ozlowski did not report to work at Fox Valley, but instead asked to be temporarily assigned elsewhere while he awaited knee surgery. His request was granted and he was assigned to work at the Irving Park facility. In November, 1993, Ozlowski underwent surgery on his right knee. After his recovery, Ozlowski asked to be detailed to the BMC. Again, Ozlowski's request was granted and he was detailed to the BMC's in-plant support group, where he performed various computer-related duties. During this time, Ozlowski was taking a number of medications which caused him to occasionally fall asleep at work. Although he never requested any particular accommodations while he worked at the BMC, postal officials were aware that Ozlowski had orthopedic problems and other ailments.

In early 1996, the Postal Service informed Ozlowski that his temporary detail at the BMC would be terminated and told him to report to his permanently assigned position at Fox Valley. It was at this time that Ozlowski informed the Postal Service of his limitations due to his worsened medical condition and specifically asked for a reasonable accommodation. According to one of Ozlowski's treating physicians, Ozlowski could only work in sedentary occupations, could not stand, walk, squat, stoop or kneel for prolonged periods of time and could not drive for more than 20 or 30 minutes at a stretch.

On January 18, 1996, he wrote a letter to John Wawrzyniec, a plant manager at the BMC, Ann O'Banner, a plant manager at Fox Valley, and Cynthia Kellogg, a human resources manager, requesting that his temporary detail at the BMC be continued indefinitely because of his medical condition. On February 7, 1996, he wrote to Wally Zobel, a manager at the BMC, requesting a transfer to that facility. He also wrote additional letters to Ann O'Banner, first notifying her that he would not be able to report to work there and next requesting paid medical leave based on his physical limitations.

During this time, Ozlowski underwent two knee replacement surgeries, the left knee in March, 1996 and the right knee in May, 1996. Although

his doctors said he could return to work with limitations, Ozlowski never returned to work with the Postal Service after these surgeries.

On July 19, 1996, O'Banner wrote to Ozlowski presenting him with four options: (1) disability retirement, (2) regular retirement, (3) reassignment to another position, and (4) voluntary termination. In response, Ozlowski wrote to O'Banner on July 25, 1996 inquiring about the status of his request for reasonable accommodation, stating that "[a]s you are aware, I requested reassignment to the Bulk Mail Center. My request has been ignored." For her part, O'Banner contacted Wawrzyniec and inquired about the status of Ozlowski's request. O'Banner testified that she did not attempt to place Ozlowski herself because he had informed her that, based on his medical restrictions, he could not travel the distance to Fox Valley. After speaking with Ozlowski and receiving a note from Wawrzyniec, she believed Ozlowski was going to pursue disability retirement. Shortly thereafter, in August 1996, Ozlowski did choose the first option O'Banner had presented and applied for disability retirement, which the Postal Service granted effective October, 1996. On September 25, 1996, Ozlowski filed a formal complaint with the Equal Employment Opportunity Commission and on January 11, 1999, the EEOC issued its final decision. Ozlowski then filed a complaint in district court, which is the basis for the present appeal.

II.  Discussion

"We conduct de novo review of a district court's decision involving cross-motions for summary judgment," Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 692 (7th Cir. 1998), viewing all of the facts, and drawing all reasonable inferences from those facts, in favor of the nonmoving party. Id. Summary judgment is proper if the record shows that "there is no genuine issue as to any material fact and that [a] moving party is entitled to judgment as a matter of law." Id. (quoting Fed.R.Civ.P. 56(c)). See also Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).

Ozlowski filed suit under the Rehabilitation Act of 1973 claiming that the Postal Service had failed to reasonably accommodate his physical limitations. The Rehabilitation Act provides that no "qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination . . . by the United States Postal Service." 29 U.S.C. sec. 794(a). The standards used to determine whether a violation of this section has occurred are those used to interpret the Americans with Disabilities

Act ("ADA"). 29 U.S.C. sec. 794(d); Gile v. United Airlines, Inc., 95 F.3d 492, 497 (7th Cir. 1996). The ADA defines "discrimination," in part, as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of business." 42 U.S.C. sec. 12112(b)(5)(A). Reassignment to a vacant position is a form of reasonable accommodation. 42 U.S.C. sec. 12111(9)(B). Federal regulations promulgated under the ADA make clear, however, that an applicant for a vacant position "must be qualified for, and be able to perform the essential functions of, the position sought with or without reasonable accommodation." 29 C.F.R. pt. 1630. app.

The ADA regulations also state that, to determine the appropriate reasonable accommodation, the employer may need to "initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. sec. 1630.2(o)(3); Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000) (employer has the burden of exploring with the worker the possibility of a reasonable accommodation). However, the failure to engage in the interactive process by itself does not give rise to relief. Rehling v. City of Chicago, 207 F.3d 1009, 1015-16 (7th Cir. 2000). Instead, we must first look at whether there is a genuine issue of material fact regarding the availability of a vacant position to accommodate Ozlowski. If there were such a position, only then do we consider whether the failure to provide that accommodation was due to a breakdown in the interactive process. See Baert v. Euclid Beverage, Ltd., 149 F.3d 626, 632 (7th Cir. 1998). It is the plaintiff's burden to show that a vacant position exists for which he was qualified. Rehling, 207 F.3d at 1015; McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159, 1165 (7th Cir. 1997). The district court found that the Postal Service was not liable for failure to accommodate by reassignment because Ozlowski had failed to submit evidence demonstrating that a vacant position existed for which he was qualified.

On appeal, Ozlowski argues that he identified several open positions for which he was qualified and that he could have performed regardless of his limitations. In order to be "qualified," the employee must "(1) satisfy the legitimate prerequisites for that alternative position, and (2) be able to perform the essential functions of that position with or without reasonable

accommodations." Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 678 (7th Cir. 1998). Except as specifically discussed below, Ozlowski does not provide any evidence of his qualifications in comparison to the legitimate prerequisites for any of the positions he identified or any evidence that such positions were vacant, other than his own conclusory statements./1 Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Haywood v. North Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir. 1997).

   For example, Ozlowski contends that there was a schemes analyst position for which he was qualified. While that position was currently filled on a temporary detail, Ozlowski believed the person detailed to that position could have been transferred to another position and he could have then filled what would become a vacant spot. Wawrzyniec testified in his deposition that he did not believe Ozlowski could safely perform the duties of a schemes analyst, which included hanging and changing signs and climbing ladders. Ozlowski contends that the Postal Service had accommodated another employee by assigning her a scooter and another employee to assist her and that the Postal Service should have done the same for him.
   Even if we assume that the schemes analyst position had been vacant,/2 given Ozlowski's physical limitations, he was not qualified for the position. While it is true that an employer may redistribute marginal functions of a job to other employees, an employer is not required to reallocate essential functions "that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position." 29 C.F.R. pt. 1630, app. See Hansen, at 523-24; Malabarba v. Chicago Tribune Co., 149 F.3d 690, 700 (7th Cir. 1998); Cochrum v. Old Ben Coal Co., 102 F.3d 908, 912 (7th Cir. 1996).

   As the district court noted, the bulk of a schemes analyst's job involves maintaining mail sorting schemes and performing scheme changes. This includes hanging and changing signs indicating a change of schemes and climbing ladders in order to place and replace the signs. Given Ozlowski's physical limitations, he could not have performed these functions. Even if the Postal Service made an accommodation to a previous employee by assigning her a helper to essentially perform her job, the Postal Service was not required to do so for her and likewise was not required to do so for Ozlowski.

Next, Ozlowski contends that a computerized printout produced by the Postal Service in response to interrogatories identifies a number of vacant positions within his restricted commuting area that were vacant in 1996. The Postal Service now disputes whether this list accurately identifies positions which were vacant during 1996. However, even if we assume that the list contains every position vacant during the time period in which Ozlowski requested a reasonable accommodation, he presented no evidence, other than his own statements, that he was qualified to perform any of these positions.

Lastly, Ozlowski contends that there was a vacant mail flow controller position for which he was qualified. This is his most persuasive argument because Wawrzyniec admitted that the position was vacant and that Ozlowski was qualified to fill it. However, Wawrzyniec was doubtful that Ozlowski could have climbed the stairs to get to the work station and also expressed concern that Ozlowski's drowsiness problem made it unsafe for him to perform the job. Indeed, Wawrzyniec stated that he made no attempt to find another place for Ozlowski after his detail ended because he thought there were no jobs that Ozlowski could safely perform.

Ozlowski argues that, if he had been asked, he would have told Wawrzyniec that he no longer had problems with drowsiness and could walk up the necessary flights of stairs. Wawrzyniec admitted that he did not ask Ozlowski in 1996 about his drowsiness problem, about whether he was still taking medications, or about whether he could walk up the stairs.

While we think it would have been prudent for Wawrzyniec to have communicated more effectively with Ozlowski, there is an independent reason that we decline to find that the Postal Service failed to provide a reasonable accommodation. Wawrzyniec stated that, while the mail-flow controller position was vacant, there was an informal hold on filling that position pending the installation of a new computer system nationwide which could change or even reduce job requirements. We do not believe that a reasonable accommodation means that an employer is required to fill a position which, based on a reason wholly independent of the employee's disability, it had chosen not to fill. Such a position is not "vacant." Cf. Equal Employment Opportunity Comm'n v. Humiston-Keeling, Inc., 227 F.3d 1024, 1028 (7th Cir. 2000) (ADA does not require employer to reassign a disabled employee to a vacant position where there is a better applicant, provided it is the employer's policy of giving vacant job to best applicant). Even if Wawrzyniec had the

authority to fill the position regardless of the informal hold, the position would have been temporary until the arrival of a new computer system. The Postal Service was not obligated to place Ozlowski in such a position in order to accommodate him. See McCreary, 132 F.3d at 1165 ("Occasional opportunities to work in another department are not equivalent to a vacancy for a permanent position.").

Ozlowski also appeals the district court's denial of his cross-motion for summary judgment, which was based on the ADA rather than on the Rehabilitation Act. The ADA specifically excludes government employers. 42 U.S.C. sec. 12111(5)(B)(i). Nevertheless, since Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims, the district court considered Ozlowski's arguments in granting summary judgment for the Postal Service. We do likewise and conclude that the district court properly denied Ozlowski's cross-motion.

III.  Conclusion

Since Ozlowski failed to identify a vacant position at the Postal Service for which he was otherwise qualified, the district court properly granted summary judgment under the Rehabilitation Act of 1973. Accordingly, we affirm.

/1 Wawrzyniec did admit in his deposition that there were some positions for which he thought Ozlowski had the technical skills, but there is no evidence that these positions were vacant.

/2 We note that an employer is not required to bump a current employee in order to provide reasonable accommodation. See Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996). We also note that, at the time of his deposition in September, 1998, Ozlowski believed the same person still occupied the position he desired.