In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-3673

SUKUMARI NAIR,

*Plaintiff-Appellant*,

*v.*

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 6806—**Joan Humphrey Lefkow**, *Judge.*

———————

ARGUED JUNE 2, 2006—DECIDED OCTOBER 2, 2006

———————

Before POSNER, EASTERBROOK, and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*.  This Title VII case charges discrimination in the form of subjecting the plaintiff to a hostile working environment because of her national origin, and also retaliation for her complaining about that discrimination to the Equal Employment Opportunity Commission. The district court granted summary judgment for the defendant.

Nair, the plaintiff, is a nurse in a veterans hospital. In 1995 and again in 2000 she complained to the EEOC about discrimination by her supervisory employees on the basis of

her national origin; she was born in India. These matters were settled in 2001, on what terms we do not know. After the settlement (though probably before as well), her coworkers insulted, criticized, and tried to avoid her. In the most serious incident, one of them poked her in the abdomen with a scissors, though without injuring her.

There is no indication, however, that any of this hostile behavior was connected with Nair's being of Indian—or for that matter of unspecified—foreign origin. Discrimination on the basis of foreign *citizenship* is not forbidden by Title VII. *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86 (1973); *Fortino v. Quasar Co.,* 950 F.2d 389, 392-93 (7th Cir. 1991); *Sagana v. Tenorio,* 384 F.3d 731, 738 n. 5 (9th Cir. 2004). But discrimination on the basis of unspecified foreign *origin* conceivably might be, as the EEOC believes, EEOC, "Guidelines on Discrimination Because of National Origin," 45 Fed. Reg. 85632 (Dec. 29, 1980); EEOC, "Definition of National Origin Discrimination," 29 C.F.R. § 1606.1 (2006), though we can find only one case, and that not an appellate one, that discusses the possibility. *Kanaji v. Children's Hospital of Philadelphia,* 276 F. Supp. 2d 399, 401-02 (E.D. Pa., 2003). A defendant might be indiscriminate in his hostility to persons born abroad who retain traces of foreignness in their accent or appearance or manners. One can be hated not because one isn't a U.S. citizen— maybe he is a U.S. citizen—but because he's not a native-born American. (We don't know the citizenship of Nair or the other nurses.)

The district judge in the *Kanaji* case thought that the Supreme Court's opinion in *Espinoza* had resolved the issue in favor of liability. He said "the Supreme Court provided [in *Espinoza*] a[n] . . . example of an illegal employment practice: 'hiring aliens of Anglo-Saxon background but refusing to hire those of Mexican or Spanish ancestry.' [414 U.S. at 95]. By suggesting that a refusal to hire people of

'Spanish-speaking background' would constitute discrimination on the basis of 'national origin,' or that insisting on an 'Anglo-Saxon background' as a condition of employment is also prohibited, it is clear that the Supreme Court would not require that one's 'national origin' be linked directly to a specific country or nation." 276 F. Supp. 2d at 401. We disagree with this characterization of what the Court meant. To say you hire only people of "Anglo-Saxon" background is implicitly anti-Semitic, anti-black, anti-Irish, anti-Spanish, etc., even if you don't add "and no one who is a native Spanish speaker [even if he's fluent in English]." But it is different if you say you hire only people born in the United States. That would be the test case of discrimination on the basis of unspecified foreign origin ("foreignness").

We need not decide whether such discrimination is actionable under Title VII, as most of Nair's coworkers, including most of those whom she accuses of harassing her, appear to have been themselves foreign-born. They described themselves as "Filipino" or "from the Philippines"; their English, as we'll see, is nonstandard; one referred to her dialect as Tagalog, which is one of the major languages of the Philippines. And none of them ever referred to Nair's national origin, let alone to her being foreign-born or not a "real American." Their hostility toward her was based on her filing incessant complaints with her superiors about the competence of the other nurses and about their harassing her. They resented her complaints, naturally; and it was the complaints rather than Nair's national origin, so far as appears, that precipitated the harassment.

It is true that most of the nurses in the unit are of Philippine origin, and Nair apparently is the only one of Indian origin, and maybe there is animosity between these nationalities. A recent public opinion poll reports that "the only country with widespread negative view about India's

influence is the Philippines, with 57% voting 'mainly neg-
ative,'" BBC World Service, "World 'Lukewarm to India's
Role,'" Feb. 3, 2006, http://news.bbc.co.uk/2/hi/ south_
asia/4676304.stm; see also "Why Do Filipinos Dislike
Indians??," soc.culture.indian (Google Group), Feb. 4, 2006,
http://groups.google.com/group/soc.culture.indian/
browse_thread/thread/6dbb2e1adc1a895e/489d80a1461c
f1a4%23489d80a1461cf1a4). But this interesting bit of
background (if true, which we do not know) is not men-
tioned by Nair. And it was Nurse Wszolek, of Polish origin,
who told Nair that Nair was "a paranoid jerk" and "needed
a psych evaluation" and that Wszolek felt sorry for Nair's
husband. The nurse who told Nair that Nair's husband
would make money if Nair died was of Philippine origin,
but not the nurse who told Nair that she didn't want to talk
to Nair any more—she is Chinese, though born in Laos.

So there is no basis in the record for attributing the
conduct of which Nair complains to her national origin or
foreignness. The workers who harassed her, moreover, were
not the supervisors whom she had accused of having
discriminated against her earlier on the basis of her national
origin. Nor can it be inferred from the fact that her com-
plaints concerning the earlier discrimination were settled
that they had any merit—but even if they did, this would
not fill the void of evidence that the later harassment, the
subject of the present suit, arose from Nair's national origin.

That leaves, however, her claim of retaliation. The main
act alleged to constitute retaliation is the poking her
with the scissors, a battery. We need not decide whether the
nasty comments also rose to the level of retaliation. While it
is now settled that retaliation to be actionable need not take
the form of an adverse employment action, *Burlington
Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2409, 2414

(2006), "petty slights or minor annoyances" won't do. *Id*. at 2415. The test is whether the conduct alleged as retaliation would be likely to deter a reasonable employee from complaining about discrimination. *Id*. at 2409, 2415-16.

But the *motive* must be to retaliate for activity protected by Title VII, and the only evidence of that to which Nair points us is two sets of comments that she testified were made to her by other nurses in her unit: "You keep record of EEO. You keep record of silly things, keep going to the EEO. You are a jerk. You are a liar," and "Oh you write everything else, every silly thing, and you keep going to the EEO. You think you are a perfect person." If this is what the nurses said, it seems they were confused and thought that because Nair had filed complaints with the EEOC in the past—the two complaints that culminated in the 2001 settlement—the complaints she kept making to supervisors about her mistreatment by the other nurses were also complaints to the EEOC. They were not.

Would it be retaliation within the meaning of Title VII to harass a coworker who you *mistakenly* thought was complaining to the EEOC about you? Literally not. The statute forbids an employer "to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The nurses were retaliating against Nair for complaining about harassment that was not based—that Nair did not claim was based—on her national origin, or on "any [other] practice made an unlawful employment practice by" Title VII.

The point is not that retaliation is actionable only if the

charge or opposition by the victim of the retaliation has legal merit. A person who complains about discrimination cannot be expected to have anything more than an honest and reasonable belief that there has been a violation of law; and no more is required to support her retaliation claim. *Dey v. Colt Construction & Development Corp.*, 28 F.3d 1446, 1458 (7th Cir. 1994); *Jennings v. Tinley Park Community Consolidated School District No. 46*, 796 F.2d 962, 967 (7th Cir. 1986); *Rucker v. Higher Education Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir. 1982). But there is no indication that in complaining about the other nurses, Nair believed they were violating Title VII. If they retaliated against her, it was for what they thought, but she did not, was a charge that they were violating Title VII.

Could the statute be stretched to cover such retaliation, on the ground that it inhibits the filing of legitimate charges of discrimination? We cannot find any discussion of the question, but it is another question that we need not try to answer in this case. For an employer is liable for harassment by coworkers, whether discriminatory or retaliatory, only if it negligently fails to take proper preventive or corrective measures. E.g., *Doe v. Oberweis Dairy,* 456 F.3d 704, 716-17 (7th Cir. 2006); *Knox v. Indiana,* 93 F. 3d 1327, 1334-35 (7th Cir. 1996). There is no evidence of that. Also no evidence to support Nair's argument that this is not *really* a case of coworker harassment—that supervisors had told her coworkers that she had complained to the EEOC, told them in the hope and expectation that they would react to the information by harassing her. After the incident in which one of the nurses told Nair that she didn't wish to speak with her any more, one of the supervisors called a meeting with the nursing staff in which, in the words of the district judge, "some of the other nurses in the telemetry unit asked that Nair be removed because 'she writes things, go [sic] to

the EEO, and she write memos to the nurse manager. She [is] putting us in trouble. We don't want to work with her.' . . . After the meeting, Nair requested a transfer to a different department; this request was granted." So a supervisor knew that Nair's coworkers were upset because they thought she was complaining about them to the EEOC. But there is no evidence that having learned this, the supervisor directed the nurses to retaliate against Nair.

So Nair has no case. But we cannot end without noting the unprofessional conduct of Nair's lawyer. His opening brief states that one of Nair's supervisors told her: "You keep going to the EEO. Are you planning to go to the EEO? You handing me these letters and you trying to go to the EEO. Not do this. That's why these co-workers get angry to you and making all these problems. You creating problems . . . . [Y]ou are the one going to the EEO." Nair stated this in a deposition but the district judge struck the statement because it contradicted Nair's earlier deposition, in which when asked whether any manager had made any negative comments about her EEO complaints she had responded, "No, she did not directly state to me, but her actions, her facial expression and the way she take care of things, I can see." (Later in her deposition, in a portion not stricken by the district judge, Nair had attributed the "You keep going to the EEO," etc. to her coworkers, not to a supervisor). Nair's brief does not challenge the judge's ruling. Nor another ruling, excluding a letter that the brief nevertheless relies on. The defendant's brief takes the plaintiff to task for relying on evidence that the judge excluded, as well as for a number of gross misstatements of the record. The plaintiff's reply brief ignores these charges, and instead continues to recite excluded or inadmissible testimony. We direct Nair's lawyer to show cause within 14 days why he should not be disciplined for unprofessional conduct before

this court.

    The judgment for the defendant is

                                                     AFFIRMED.

A true Copy:

        Teste:

                           _____

                           *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*