NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued February 20, 2007
Decided April 27, 2007

**Before**

Hon. DANIEL A. MANION,,  *Circuit Judge*

Hon. MICHAEL S. KANNE,  *Circuit Judge*

Hon. DIANE P. WOOD,  *Circuit Judge*

| | |
|---|---|
| No. 06-3180 | Appeal from the United States District Court for the Northern District of Illinois, Eastern District |
| GEORGE T. NOVAK, *Plaintiff-Appellant,* | |
| | No. 02 C 7206 |
| *v.* | |
| R. JAMES NICHOLSON, Secretary of Department of Veterans Affairs, *Defendant-Appellee.* | **James B. Zagel**, *Judge.* |

**O R D E R**

For over eighteen years, George Novak, a partially disabled veteran, worked for the Department of Veterans Affairs ("VA") in various jobs.  In 2002, after a series of injuries and operations, he applied for and received early retirement. He then sued the VA for disability discrimination. The district court granted the VA summary judgment.  Novak appeals.  We affirm.

## I.

George Novak began working for the Hines VA Hospital in 1985 as a plumber/pipefitter. At the time the VA hired Novak, he suffered a 30% disability due to an injury he suffered during his military service, where his back and left shoulder were seriously injured. In 1991, the VA transferred Novak to the machine shop when it became difficult for him to continuing working as a plumper/pipefitter due to his inability to reach overhead to perform certain work-related functions. In the machine shop, Novak worked as an industrial mechanic, repairing and maintaining hospital equipment. While working in this position, Novak received some additional accommodations so that he did not have to climb ladders or lift items overhead, and the work he had to do in tight areas was restricted.

In June 1996, Novak suffered further injuries in an automobile accident requiring hip replacement surgery. After rehabilitation, Novak returned to his position in the machine shop, but he had additional limitations added: he was not to work on roofs or in tight areas at all and had a lifting limitation of 25 - 30 pounds. Additionally, the VA allowed him to use a motorized cart due to his inability to walk long distances.

Novak sustained another hip injury in 2000 when he was struck by a pick-up truck. In April of that year, he underwent a hip revision procedure. Novak's surgeon provided the VA with additional restrictions for Novak, which required him to have two months of rest and then be placed in a job that would not require standing, lifting, squatting or stooping for four months. Novak's surgeon further recommended that he not climb ladders, work on roofs or uneven areas and not stoop, bend, kneel, or lift more than five pounds. The restrictions further prohibited Novak from pushing or pulling heavy equipment or from standing or walking for prolonged periods. The VA informed Novak that with these restrictions, he could not work in the machine shop and that he would instead be assigned to a light duty job as a surgical unit elevator operator for four months. That time was extended twice, but with the final extension, the VA informed Novak that it might not be able to continue to provide him with a light duty assignment after July 13, 2001. The VA further explained that if it were unable to provide a continued light duty assignment, it would either refer Novak to Human Resources for reassignment or he would be terminated.

On June 25, 2001, the doctor released Novak to work without any restrictions and Novak returned to his job as a mechanic. From June through September 2001, Novak repeatedly requested a transfer to other positions, but those requests were all denied. Then on November 29, 2001, Novak's surgeon informed the VA that the

resumption of duties had caused Novak pain in his hips, groin, and legs and the doctor recommended that from December 3, 2001, until February 4, 2002, Novak be assigned to a job that was "sedentary in nature and that he have a comfortable, firm, seated chair with the seating not less than 19 inches from the ground." The VA responded by assigning Novak to a clerical job in Engineering Services. On January 31, 2002, Novak's doctor sent another letter to the VA recommending that Novak be kept on the same light duty restrictions until retirement.

On April 4, 2002, Novak applied for early retirement. The VA approved the request and Novak retired effective September 27, 2002. However, after his retirement, Novak sued the VA, claiming the VA failed to accommodate his disability, retaliated against him in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* and Title VII, 42 U.S.C. § 2000e *et seq.*, and constructively discharged him. The parties filed cross-motions for summary judgment. The district court denied Novak's motion and granted the VA's motion. Novak appeals.

II.

On appeal, Novak first argues that the district court erred in denying his motion for summary judgment and granting the VA's motion for summary judgment on his failure to accommodate claim brought under the Rehabilitation Act of 1973. We review decisions at the summary judgment stage de novo. *See, e.g., Franklin v. City of Evanston,* 384 F.3d 838, 843 (7th Cir. 2004). "[W]e draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party . . . ." *Id. (*quoting *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003)). "This standard applies when cross motions for summary judgment are filed," as they were here. *Franklin*, 384 F.3d at 843.

The Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, the counterpart of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, for federal agency defendants, prohibits recipients of federal funds from discriminating against a qualified individual on the basis of his disability. To establish a failure to accommodate claim under the Rehabilitation Act, a plaintiff must establish: 1) he is a disabled person as defined by the statute; 2) that the employer was aware of the disability; and 3) that he is "otherwise qualified" to perform the "essential functions" of the job, "with or without reasonable accommodation." *See Winfrey v. City of Chicago,* 259 F.3d 610, 614 (7th Cir. 2001).

Novak initially argues that the VA failed to accommodate him "because the agency failed to engage in an interactive process in order to determine the appropriate form of accommodation." Appellant Brief at 15. However,

the failure to engage in the interactive process by itself does not give rise to relief. Instead, we must first look at whether there is a genuine issue of material fact regarding the availability of a vacant position to accommodate [the plaintiff]. If there were such a position, only then do we consider whether the failure to provide that accommodation was due to a breakdown in the interactive process. It is the plaintiff's burden to show that a vacant position exists for which he was qualified.

*Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) (internal citations omitted). Therefore, even if the VA did not engage in an interactive process with Novak, that failure is not actionable in and of itself; rather, Novak must first present evidence of a vacant position.[1] *Id.*

While Novak complains that without the VA's help he was unable to find a vacant position, it was Novak's responsibility in discovery to obtain the necessary evidence to support his failure to accommodate case, for instance, by requesting copies of vacancy or placement announcements. However, even after discovery, Novak has not presented any evidence that a vacant position existed at the VA for which he was qualified. Although Novak pointed to several positions in which he was interested, he did not present any evidence that there were vacancies in those positions. Novak admits as much in his brief stating, "[e]ven if some of the jobs identified by Novak did not equate with actual vacancies at the hospital, that is no excuse for the Agency to 'hide the ball' with respect to actual vacancies by completely failing to engage in the interactive process." Appellant Brief at 22. Again, if there were no actual vacancies, the VA's failure to engage in the interactive process is not actionable. *See Ozlowski*, 237 F.3d at 840; *see also Mays v. Principi*, 301 F.3d 866, 870-71 (7th Cir. 2002) (stating that the failure to "jaw about accommodations is harmless" if no reasonable accommodation is possible). Moreover, Novak admitted in his deposition that he never saw a job posted at the VA that was consistent with his physical limitations and knowledge, skills, and abilities.

---

[1] Novak also complains that the VA did not establish the required procedures to facilitate the granting of reasonable accommodations, as required by Executive Order 13164, 65 Fed. Reg. 46,565 (July 26, 2000). Appellant Brief at 17. However, this Executive Order provides that it "does not create any right or benefit, substantive or procedural, enforceable at law or equity against the United States, its agencies, its officers, its employees, or any person." *Id.* Thus, even if the VA failed to comply with this Executive Order, it does not provide a basis for liability on Novak's failure to accommodate claim.

Alternatively, Novak attempts to establish the existence of a position for which he was qualified by pointing to the deposition testimony of Ralph Hubert. Hubert supervised Novak when Novak was temporarily assigned to a clerical position in the Material Management Unit. In that position, Novak worked on inventories, data entry, bar code scanning, and physical inventories. Novak points to Hubert's deposition testimony that he was an "excellent worker" and that Hubert was more than willing "to employ Novak in the position on a permanent basis if given the opportunity to do so." From that testimony, Novak claims that there was a position for which he was qualified. Hubert's testimony, however, does not establish that there was vacancy in that position; rather, it shows the position was merely a temporary position. As we have explained, "[o]ccasional opportunities to work in another department are not equivalent to a vacancy for a permanent position. Pointing to a current vacancy is required . . . ." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997).

Moreover, during oral argument we queried Novak on his reliance on Hubert's testimony. We noted that it seemed that Novak's theory was that, while there was not a job currently available in the Material Management Unit, the VA had an obligation to process the paperwork to see if it could create the job. Novak's attorney responded: "That's exactly what I'm saying." An employer, however, is not required to create a new position, temporary or permanent, to accommodate a disabled employee. *Giles v. United Airlines, Inc.*, 213 F.3d 365, 374 (7th Cir. 2000) (stating that the obligation to accommodate reasonably does not mean that employers must bump another employee or create a new position). Therefore, Novak's reliance on Hubert's testimony is misplaced and his failure to present evidence of a vacancy for which he was qualified dooms his case.[2] *See Ozlowski*, 237 F.3d at 840. Accordingly, the district court properly denied Novak summary judgment and granted the VA summary judgment on Novak's failure to accommodate claim.

Novak also argues that the district court erred in granting the VA summary judgment on his constructive discharge claim. Specifically, Novak claims that his

---

[2] On appeal, the VA also argues that Novak's reasonable accommodation claim fails because Novak did not present sufficient evidence that he was disabled within the meaning of the statute. The district court concluded that a genuine issue of material fact existed regarding whether Novak was substantially limited in a major life activity, namely walking and working. Because we conclude that Novak's failure to identify a vacant position for which he was qualified dooms his reasonable accommodation claim, we need not address the issue of whether he was disabled within the meaning of the statute.

treatment at the VA hospital after he filed his EEO complaint became so intolerable that he had to quit.  In support of his claims, Novak points to the fact that he was called "bad back George," was depicted in two caricatures as a "pirate with a peg leg," and that on one occasion a co-worker purposely revved the engine in a truck, causing it to lurch forward at him.  Novak also stated that the Service Chief, James Predlides, told him: "You will never have a job.  You're out.  That's it."  And:  "Get out of Engineering Service."  Novak also complains that other times Predlides asked him: "Are you still here?  You didn't retire yet?  Did you put in for your disability?  Are you going?"  Finally, Novak claims that because the VA refused to engage in the interactive process and to reassign him to a light duty job,  he had no choice but to quit.

We address the last point first:  Because Novak failed to present evidence of a vacant position for which he was qualified, Novak cannot rely on the VA's refusal to reassign him to a light duty position as evidence of a constructive discharge.  As to the other incidents:  Novak must prove they made his "working environment. . . so intolerable that [his] resignation qualified as a fitting response." *Rooney v. Koch Air, LLC*, 410 F.3d 376, 383 (7th Cir. 2005) (internal quotation omitted).  This court in *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000), explored the circumstances where "conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation."  In that case, the plaintiff had alleged a claim of constructive discharge after refusing to return to work because a co-worker, named Vasilopulos, had told him to "[g]et the f--- out of the office before I pop a cap in you're a--."  The plaintiff further claimed that Vasilopulos then "began prancing around, derisively caricaturing African-Americans," and "asked whether Tutman had seen a movie entitled *N----- with Hats*." *Tutman*, 209 F.3d at 1046. This was a one-time verbal encounter for which Vasilopulos was disciplined. We rejected Tutman's claim of constructive discharge, concluding that "a reasonable employee would not have found work conditions at CBS to be so intolerable that he would have to quit his job." *Id.* at 1050. In reaching this conclusion, we compared Tutman's situation to cases where there was a constructive discharge.  *See, e.g., Snider v. Consolidation Coal Co.,* 973 F.2d 555, 558 (7th Cir. 1992); *Taylor v. Western & S. Life Ins. Co.,* 966 F.2d 1188, 1191 (7th Cir. 1992); *Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 534 (10th Cir. 1998).  We explained that "[i]n *Taylor,* we found constructive discharge when the plaintiffs' boss constantly peppered the plaintiffs with racist comments, brandished a pistol and held it to one plaintiff's head." *Tutman*, 209 F.3d at 1050 (citing *Taylor*, 966 F.2d at 1191.)  Similarly, "[i]n *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423 (7th Cir. 1989), the plaintiff established constructive discharge where 'repeated instances of grossly offensive conduct and commentary' culminated with an incident during which a co-worker showed the plaintiff a racist

pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff and threatened to kill her." *Tutman*, 209 F.3d at 1050 (quoting *Brooms*, 881 F.2d at 417). From these cases, we concluded that "[a] credible death threat that signals grave danger to the plaintiff's bodily integrity, as in *Taylor* and *Brooms,* can constitute grounds for finding constructive discharge, but the harassment suffered by Tutman at [his coworker's] hands falls well short of this standard." *Tutman*, 209 F.3d at 1050. We then concluded that "[a] reasonable person would not have feared Vasilopulos as a result of his single oblique threat, even construing all reasonable inferences in favor of Tutman, such that he would feel forced to resign." *Id.* In support of our conclusion, we relied on *Simpson v. Borg-Warner Automotive, Inc.,* 196 F.3d 873, 877-78 (7th Cir. 1999). In *Tutman*, we summarized *Simpson*'s holding that a "co-worker's comment that 'someone should take a dish and knock [the plaintiff] upside the head' did not establish constructive discharge." *Tutman*, 209 F.3d at 1050 (quoting *Simpson*, 196 F.3d at 877-78). "Likewise, in *Lindale v. Tokheim Corp.,* 145 F.3d 953, 956 (7th Cir. 1998), 'boorish behavior' by co-workers was insufficient for constructive discharge." *Tutman,* 209 F.3d at 1050. We then concluded that "Vasilopulos's harassment of Tutman was closer to the abuse suffered in these cases than to the vicious harassment in *Brooms* or *Taylor*, [but that] [e]ven assuming that Vasilopulos's harassment was so offensive and severe as to create a hostile work environment, his conduct was not so egregious as to compel Tutman's resignation and establish constructive discharge." *Id.*

These cases demonstrate the severity of the conduct required to trigger a constructive discharge. And in this case, the behavior to which Novak points falls well short of the level of behavior required for a constructive discharge. The "bad back George," "pirate with a peg leg" caricature and the revving of an engine, while unkind and boorish, were not so vicious in nature as to leave a reasonable person believing they had no option but to retire. Predlides' questioning of Novak as to whether and when he was going on disability was also not egregious and in no way compelled Novak's resignation. In short, the incidents of which Novak complains do not reach the level of an abusive working environment and thus do not support a constructive discharge claim. Accordingly, the district court properly denied Novak and granted the VA summary judgment on Novak's constructive discharge claim.

Finally, Novak claims that the district court did not consider his retaliation claim and that therefore remand is necessary. Although the district court did not address Novak's retaliation claim in its order granting the VA summary judgment, it did dispose of the entire case, thus implicitly rejecting Novak's retaliation claim. The district court may not have expressly addressed the retaliation claim because at summary judgment Novak did not present any substantive argument regarding

the retaliation claim. In fact, the VA argued to the district court that Novak waived the claim. In any event, even if Novak did not waive his retaliation claim, because our review is de novo, there is no need to remand for further proceedings. Rather, we review the record as presented on appeal in the light most favorable to Novak to determine if he presented sufficient evidence of retaliation. In support of his retaliation claim, Novak points to the same incidents that he noted above in support of his constructive discharge claim. He also claims the VA's refusal to reassign him was in retaliation for the complaint he filed with the EEO on April 26, 2001. However, as explained above, Novak failed to show that there was a vacant position available (as opposed to one which would need to be created) for which he was qualified. Therefore, the VA's failure to reassign him cannot constitute retaliation. The other complained-of incidents also do not support a retaliation claim. Although "it is now settled that retaliation to be actionable need not take the form of an adverse employment action, *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2409 (2006), 'petty slights or minor annoyances' won't do." *Nair v. Nicholson*, 464 F.3d 766, 768 (7th Cir. 2006) (quoting *Burlington Northern*, 126 S.Ct. at 2415). Yet the revving of the engine and the passing comments and caricatures were just that—trivial slights that would not "deter a reasonable employee from complaining about discrimination." *Nair*, 464 F.3d at 768-69 (quoting *Burlington Northern*, 126 S.Ct. at 2415-16). Accordingly, the VA was also entitled to summary judgment on Novak's retaliation claim.

III.

Novak failed to present evidence that the VA had a vacant position for which he was qualified. Accordingly, the district court properly denied Novak's motion for summary judgment and granted the VA's motion for summary judgment on the failure to accommodate claim. Novak also failed to present evidence of conduct sufficiently severe as to constitute illegal retaliation or a constructive discharge. Therefore, the VA was entitled to summary judgment on these claims as well. For these and the foregoing reasons, we AFFIRM.